```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOHN GUILLORY,                        :
     Plaintiff,                       :
                                      :   Case No. 3:05cv1859 (JBA)
v.                                    :
                                      :
ALLSTATE INSURANCE CO., ET AL.,       :
     Defendants.                      :
```

**RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 10]**

By Order [Doc. # 19] dated February 9, 2007, this Court directed pro se plaintiff John Guillory to file an amended complaint by February 20, 2007 pleading the basis of this Court's jurisdiction over his claims under the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.  In response, plaintiff filed "Amend Number Two for Complaint" [Doc. # 20] in which he set forth a claimed amount in controversy of more than $75,000 and his out-of-state residence at the time of filing this case.[1]

---

[1] The certificate of service certifies that the pleading was mailed "to all Defendants" but fails to list the names and addresses of the persons served, as required by Local R. Civ. P. 5(b).  On March 2, 2007, defendant Allstate moved to dismiss [Doc. # 22] pursuant to Fed. R. Civ. P. 41(b) based on plaintiff's failure to timely submit his jurisdictional statement, implying either that plaintiff did not mail the pleading as he certified or that defendant did not receive it [Doc. # 20].  Plaintiff is directed to serve this pleading on defendants' counsel and to file a certificate of service listing the names and addresses of each person served as required by Local R. Civ. P. 5(b).  Mr. Guillory is advised that future non-compliant pleadings will not be docketed and will be returned.

Although plaintiff does not specify the value of the Rolex watch at issue in his claims, see infra pt. I, in light of the CUTPA's provision for punitive damages, Conn. Gen. Stat. § 42-110g(a),[2] the amount in controversy claimed does not appear legally impossible.  With the basis claimed for federal jurisdiction clarified, defendant Allstate Insurance Company's ("Allstate") Motion to Dismiss [Doc. # 10] can be considered.  For the reasons that follow, defendant's Motion to Dismiss will be DENIED.

**I.  Background**

In August 1995, plaintiff purchased a homeowner's insurance policy from defendant Allstate.  (Am. Compl. [Doc. # 16] at 1.) In November 2001 plaintiff filed two claims under this policy based on the "loss" of a Rolex brand men's watch plaintiff had purchased in August 1998.  (Id. at 1-2.)  Plaintiff retained Attorney Bradford J. Sullivan to pursue his claim, and Sullivan

---

Defendants' Motion [Doc. # 22] is DENIED as moot.

[2] With respect to the damages provision of CUTPA, which bears on the legal possibility of plaintiff's claimed amount in controversy, courts are divided as to whether the statute's punitive damages provision permits a discretionary award of treble damages.  See Smith v. Coldwell Banker Real Estate Servs., 122 F. Supp. 2d 267, 273 (D. Conn. 1999); contra GICC Capital Corp. v. Tech. Fin. Group, No. CV 970159419, 1998 Conn. Super. LEXIS 2456, at *9 n.2 (Conn. Super. Ct. Aug. 28, 1998); Conning Corp. v. Davenport Group, No. CV91 0115140 S, 1992 Conn. Super. LEXIS 1167, at *13-14 (Conn. Super. Ct. Apr. 30, 1992) ("In Connecticut, double and treble damages can only be awarded if authorized by statute . . .  § 42-110g(a) permits the recovery of actual damages for ascertainable loss as well as punitive damages . . . It does not allow for double/treble damages as such.").

sent a letter to Allstate's Special Investigations Unit on April 19, 2002 informing defendant of his representation of plaintiff and asking that future correspondence be sent to Sullivan rather than to plaintiff, "including communications regarding the scheduling of a time to take Mr. Guillory's sworn statement." (Apr. 19, 2002 Sullivan letter, id. at Ex. 1.)[3]  In May 2002, when plaintiff changed counsel to defendant Morris Olmer, Sullivan forwarded Guillory's file to Attorney Olmer (May 13, 2002 Sullivan letter, id. at Ex. 2) and informed Allstate's counsel Raymond J. Kelly of the change in plaintiff's representation (May 28, 2002 Sullivan letter, id. at Ex. 3).

Plaintiff provided to Allstate an inventory of the "alleged stolen property," receipts of the property, and credit card statements to defendant.  Allstate denied plaintiff's claim by letter dated July 9, 2002.  (See Feb. 11, 2005 def. letter, Pl. Opp. Ex. 1; June 22, 2005 def. letter, Am. Compl. at Ex. 5.)  The denial was based in part on plaintiff's failure to appear for his "examination under oath," which had been scheduled by Allstate for July 8, 2002.  (June 22, 2005 def. letter, Am. Compl. at Ex. 5.)  After the claim denial, plaintiff appealed or complained to the State of Connecticut Insurance Department.  (See Reid letter, Pl. Opp. Ex. 2.)  As directed by Richard Reid of the State of

---

[3] The exhibits attached to both the Complaint and Amended Complaint may be considered on a motion to dismiss.  See infra pt. II ("Standard").

3

Connecticut Insurance Department, defendant then sent plaintiff a letter dated February 11, 2005 and included a copy of Allstate's 2002 denial letter and copies of the documents plaintiff had submitted. (Id.) By June 22, 2005, Allstate had received a letter from plaintiff apparently complaining that he had not received notice of the scheduled examination. (June 22, 2005 def. letter, Am. Compl. at Ex. 5.) Defendant informed plaintiff that after receiving Sullivan's letter stating he no longer represented plaintiff, at no time:

> did any attorney ever contact Allstate on your behalf . . . Accordingly, on May 28, 2002, Allstate's attorney Raymond Kelly, wrote directly to you . . . [at] the only address with which you had ever provided Allstate. . . . Attorney Kelly next wrote directly to you on June 24, 2002, via certified and regular mail, advising you that your examination under oath had been scheduled for July 8, 2002. . . . You failed to appear for your examination under oath. . . . Per your request herewith is a copy of the return receipt, confirming that the letter was signed for and received on your behalf by M. Guillory on July 30, 2002.

(Id.)

On October 24, 2005, Reid responded to plaintiff's inquiry, providing the following information to plaintiff: 1) a copy of Conn. Gen. Stat. § 38a-816(6), "[t]he state regulations concerning insurer conduct regarding unfair claims;" 2) that plaintiff's "remaining option" with respect to his disagreement with defendant's denial was court action; and 3) that Allstate's "investigation and conclusions . . . appear[ed] correct" and that he "may want to further discuss this matter with the legal aid

4

Society."  (See Reid letter, Pl. Opp. Ex. 2.)

Plaintiff claims that he "never received any type of communication from Attorney defendant Olmer or from Defendant Allstate insurance prior to letter dated June 22, 2005," and that defendant Allstate is therefore liable for "refusing to pay claims without conducting reasonable investigation," "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims," "delaying the investigation or payment of claims," and "failing to promptly settle claims."  (Am. Compl. at 4-5.)  In addition, plaintiff alleges that defendant Olmer did not "keep [him] reasonably informed" or "make reasonable efforts to expedite litigation," and that Olmer "ma[d]e a false statement of material fact or law to a third person" and/or "fail[ed] to disclose a material fact . . . when disclosure [was] necessary to avoid assisting a criminal or fraudulent act by a client."  (Id. at 6.)

In moving to dismiss, defendant Allstate argues that plaintiff has failed to state a claim upon which relief can be granted, and that even assuming he has alleged a violation of CUTPA or CUIPA,[4] the counts are barred by the statute of limitation.  Defendant Olmer was served on March 2, 2006 [Doc. #

---

[4] Defendant had also addressed what it perceived to be a claim of common law bad faith in plaintiff's original Complaint, but plaintiff appears to abandon this claim in his Amended Complaint; thus, it will not be addressed.

5

13], but has not entered an appearance or filed any pleadings.

**II. Standard**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). In deciding a motion to dismiss under Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).

**III. Discussion**

    **A. Fed. R. Civ. P. 8(a)**

Defendant argues that plaintiff's CUIPA[5] and CUTPA violations fail to meet the basic pleading requirements of Fed. R. Civ. P. 8(a). (Def. Mot. [Doc. #10] at 5-6.) A plaintiff is required to set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson,

---

[5] A plaintiff may bring a CUTPA claim predicated on a claim for unfair settlement practices under CUIPA. See Mead v. Burns, 509 A.2d 11, 18 (Conn. 1986) ("it is possible to state a cause of action under CUTPA for a violation of CUIPA"); Macomber v. Travelers Property & Casualty Corp., 804 A.2d 180, n.14 (Conn. 2002) (permitting plaintiffs to assert a CUTPA violation based on CUIPA).

6

355 U.S. 41, 47 (1957), quoting Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). "However inartfully pleaded, a pro se complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 413 (2d Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

To prevail on a CUTPA claim, plaintiff must show that the defendant engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Three criteria are used in assessing whether a practice is unfair, although all three need not be proved:[6] "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . .; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers,

---

[6] See Hartford Electr. Supply Co. v. Allen-Bradley Co., Inc., 736 A.2d 824, 843 (Conn. 1999).

7

competitors or other businesspersons." Edmands v. Cuno, Inc., 892 A.2d 938, 955 n.16 (Conn. 2006).

Plaintiff alleges that defendant Allstate violated CUTPA by "refusing to pay claims without conducting a reasonable investigation based upon all information," "not attempting in good faith to effectuate prompt, fair and equitable settlements," "delaying the investigation or payment of claims," "failing to promptly settle claims," and "failing to promptly provide a reasonable explanation of the basis . . . for a denial of a claim," in violation of Conn. Gen. Stat. § 38-815 and § 38-816(6)(d), (f), (l), (m), and (n).[7] Specifically, plaintiff alleges that defendant Allstate gave him no notice of his hearing scheduled for July 8, 2002 — that he "nerver [sic] received any type of communication from . . . Defendant Allstate Insurance prior to letter dated June 22, 2005." (Am. Compl. at 4.) Plaintiff also claims that he "ma[d]e several phone calls from the Federal Bureau of Prison Miami Camp to Allstate Insurance Special investigative Unit in Farmington, Ct," but "received no reply or return phone calls to the Federal Miami Camp from Defendant, Allstate Insurance." (Id. at 3.)[8] Additionally, the

---

[7] The Court assumes that plaintiff, in citing Conn. Gen. Stat. §§ 38a-815, 38-816(b), (d), (f), (l), (m), and (n), intended to cite Conn. Gen. Stat. § 31-815 and § 38-816(6)(d), (f), (l), (m), and (n).

[8] Intersecting with these claims are plaintiff's allegations related to defendant Attorney Olmer's failures in representing

8

allegations of plaintiff's Amended Complaint support a claim of breach of contract arising out of the claimed violation of his Allstate insurance policy.[9]

Defendant further urges the Court to dismiss plaintiff's claim because insurance practices cited by plaintiff are only "unfair" under CUTPA when "[c]ommitt[ed] or perform[ed] with such frequency as to indicate a general business practice," Conn. Gen. Stat. § 38a-816(6).  Although plaintiff has not pled any frequency with which the defendant engaged in the insurance practices he complains of, this is a proper area for discovery, particularly as such information may only be in defendant's possession, not plaintiff's.  Whether plaintiff can develop evidence that Allstate's general business practice mirrors that employed with him will be determined on a fully developed record after discovery.

Defendant is certainly on notice of the nature of plaintiff's claims, and it cannot be concluded that it is "beyond doubt that the plaintiff can prove no set of facts in support of

---

him, including failing to respond to his requests for information.  However, the fact that these assertions sound in professional negligence against Olmer is not grounds for dismissal against Allstate.  Defendant Olmer was served on March 2, 2006 [Doc. # 13] but has not appeared.

[9] In Connecticut, the elements of breach of contract are: "1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach." Chem-Tek, Inc. v. General Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993) (PCD) (citing O'Hara v. State, 590 A.2d 948 (Conn. 1991)).

9

his claim which would entitle him to relief," Conley, 355 U.S. at 45-46; thus, defendant's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

### B.  Statute of limitations

Defendant also maintains that plaintiff's CUTPA claims are barred by the statute of limitations. Defendant correctly states that the statute of limitations under CUTPA is three years from the date of the act or omission complained of. Conn. Gen. Stat. § 42-110g(f); Conn. Gen. Stat. § 52-577; Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp., 717 A.2d 77, 101 (Conn. 1998). As plaintiff filed suit on December 5, 2005, it must be determined whether plaintiff has complained of actions committed by defendant on or after December 5, 2002.

While defendant purported to deny plaintiff's claim in July 2002, plaintiff's CUTPA claim is that defendant continued to engage in unfair claim settlement practices through January 2005. Plaintiff claims inter alia: "During the course of time (December 2004 to January 2005) Plaintiff Guillory make [sic] several phone calls . . . to Allstate Insurance Special Investigative Unit" but "received no reply or return phone calls." (Am. Compl. at 3.) Moreover, plaintiff claims that defendant did not notify him of the denial of his claim until June 22, 2005. (Id. at 4.) Because this alleged conduct occurred after December 5, 2002, defendant Allstate's Motion on grounds of statute of limitations will be denied.

**IV. Conclusion**

Accordingly, defendant Allstate's Motion to Dismiss [Doc. # 10] is DENIED.

The parties, having failed to file their Fed. R. Civ. P. 26(f) report, are directed to immediately confer and file the report forthwith in compliance with Local R. Civ. P. 26(e).

IT IS SO ORDERED.

/s/

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 8th day of March, 2007.**